PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AIESHYA KAY BELLAMY, | ) | |
| | ) | CASE NO.  4:25-CV-775 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| BLUE CROSS BLUE SHIELD OF | ) | |
| SOUTH CAROLINA, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 16] |

Pending before the Court is Defendants' Motion to Dismiss or, Alternatively, Motion to Transfer.  ECF No. 16.  The motion is fully briefed.  Plf. Response Br., ECF No. 20; Defs. Reply Br., ECF No. 21.  Being duly advised, having reviewed the parties' briefs, evidence, and applicable law, the Court finds that it lacks personal jurisdiction over Defendants and that venue is improper.  With its only pending motion resolved, this action shall be transferred to the District of South Carolina pursuant to 28 U.S.C. § 1406.

## I.     BACKGROUND

Plaintiff Aieshya Kay Bellamy is an African American woman with more than 15 years of experience as an underwriter.  ECF No. 1, ¶¶ 6–13.  She was hired by Defendant Blue Cross Blue Shield of South Carolina ("Blue SC") in or around September 2017 as a senior underwriter based in Columbia, South Carolina.  The parties seem to agree that, by 2021, Plaintiff had relocated to Ohio and worked remotely for Blue SC from her residence in Ohio.  Throughout her employment, Plaintiff received positive performance reviews.  Beginning in 2019, she began expressing interest in management positions and advancement opportunities.  In 2020, Plaintiff

(4:25CV775)

applied for an underwriting management position.  Despite Plaintiff's positive performance reviews and years of experience, Defendants promoted a white male employee with less experience than Plaintiff, citing that he had received specialized training and was groomed for the position by Defendant Masqood Ali, the Vice President of Major Group Underwriting in Columbia, South Carolina.  ECF No. 1, ¶¶ 16–24.  Plaintiff complained that she was not given opportunities to work on complex cases or to receive training necessary to advance in management.  ECF No. 1, ¶ 25.

In 2021, Plaintiff took approximately three months of maternity leave under the Family Medical Leave Act ("FMLA").  She alleges that Defendants retaliated against her by: (a) assigning her five times the number of prospect cases compared to other employees; (b) assigning her additional projects and teams; and (c) transferring her book of business to a white male counterpart.  ECF No. 1, ¶¶ 27–28.

Plaintiff applied for a director's position in June 2022.  Although the position's posting initially did not include a specific location, after Plaintiff had applied, she was told the job required her to be on site in South Carolina and asked her to provide her "relocation timeline" from Ohio "within 48 hours" to remain an active candidate.  ECF No. 1, ¶¶ 34–35.  Shortly thereafter, Plaintiff withdrew her application.  ECF No. 1, ¶ 36.  Throughout her tenure, Defendants Ali, John O'Grady, and Rick Griggs made negative comments about Plaintiff and other female employees having family commitments outside of work.  On September 12, 2022, Plaintiff served a demand letter on Defendants, but no action was taken.  She was constructively discharged in October 2022.  ECF No. 1, ¶¶ 59–60.

Plaintiff claims she timely filed a charge for gender and race discrimination with the South Carolina Human Rights Commission and the Equal Employment Opportunity Commission

(4:25CV775)

("EEOC"). ECF No. 1, ⁋ 61. She received a right to sue letter on January 23, 2025, and timely filed the present action. Pursuant to Ohio Rev. Code §§ 4112.01 *et seq.* and Title VII, Plaintiff alleges that Defendants committed employment discrimination based on her race and gender in the following ways: hostile workplace, retaliation, constructive discharge, and harassment. Defendants moved to dismiss the case for lack of personal jurisdiction and improper venue or, in the alternative, transfer the case to the District of South Carolina.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)

Defendants move to dismiss the case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). In the context of a Rule 12(b)(2) motion, the burden of establishing personal jurisdiction is on the plaintiff. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974)). That burden shall meet the preponderance of the evidence standard. *Welsh*, 631 F.2d at 439. "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller*, 504 F.2d at 930). "[When] . . . the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.' " *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)); *Theunissen*, 935 F.2d at 1458). In that instance, the court views the pleadings and affidavits submitted in a light most favorable to the plaintiff, and the court "should

3

(4:25CV775)

not weigh 'the controverting assertions of the party seeking dismissal.'" Id. (quoting *Theunissen,* 935 at 1459).  Dismissal is proper "only if *all* the specific facts" alleged by the plaintiff "collectively fail to state a *prima facie* case for jurisdiction."  *Gronski v. InContact, Inc.*, 774 F. Supp. 3d 873, 880 (E.D. Mich. 2025) (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)) (emphasis in original).

### B.  Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3)

Defendants also move to dismiss the Complaint for improper venue under Fed. R. Civ. P. 12(b)(3).  Plaintiff also bears the burden to show by a preponderance of the evidence that venue is proper.  *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 621 (6th Cir. 2025) (citing *Theunissen*, 935 F.2d at 1458).  As with a motion under Rule 12(b)(2), the Court may consider facts outside the complaint but must "draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff."  *Harrison Prosthetic Cradle Inc. v. Roe Dental Lab., Inc.*, 608 F. Supp.3d 541, 546 (N.D. Ohio 2022) (quoting *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)).  If venue is improper, "The district court . . . shall dismiss, or if it be in the interest justice, transfer such case to any district or division in which it could have been brought."  *Harrison Prosthetic Cradle Inc.*, 608 F. Supp. 3d at 546 (quoting 28 U.S.C. § 1406(a)).

### III.    DISCUSSION

### A.  The Court Lacks Personal Jurisdiction Over All Defendants.

When resolving a motion to dismiss under Rule 12(b)(2), federal courts must first consider whether the forum state's long-arm statute establishes personal jurisdiction and, second, whether personal jurisdiction comports with the Due Process Clause of the United States Constitution.  *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 767 (N.D. Ohio 2019) (citing *Mid-*

4

(4:25CV775)

*West Materials, Inc. v. Tougher Indus., Inc.*, 484 F. Supp. 2d 726, 729–30 (N.D. Ohio 2007)).

Even when the state's long-arm statute prong is satisfied, personal jurisdiction may nevertheless

fail "unless exercising jurisdiction over the defendant comports with the traditional notions of

fair play and substantial justice." *Calkins v. Danaher Corp.*, 739 F. Supp. 3d 615, 626 (N.D.

Ohio 2024) (Boyko, J.) (quoting *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294,

300 (N.D. Ohio 2021)).

> *1. Ohio's long-arm statute*

The Court must first determine whether Ohio's long-arm statute provides personal

jurisdiction over the out-of-state defendants.  Plaintiff alleges the following provisions of Ohio's

long-arm statute are satisfied:

> (A) A court may exercise personal jurisdiction over a person who
> acts directly or by an agent, as to a cause of action arising from the
> person's:
>
> (1) Transacting any business in this state;
>
> . . .
>
> (6) Causing tortious injury in this state to any person by an act
> outside this state committed with the purpose of injuring persons,
> when the person might reasonably have expected that some person
> would be injured thereby in this state[.]

Ohio Rev. Code § 2307.382(A).  The Court finds Ohio's long-arm statute is satisfied.[1]

"Section (A)(1) has been found to be satisfied when an out-of-state employee regularly

communicates or otherwise works with Ohio-based employees." *Dugger v. Honeywell Int'l,*

*Inc.*, No. 1:21-CV-00892, 2021 WL 5961624, at *5 (N.D. Ohio Dec. 16, 2021) (Polster, J.)

---

[1] Defendants argue that it is unnecessary to evaluate Ohio's long-arm statute because Plaintiff cannot satisfy the due process analysis.  ECF No. 16 at PageID #: 80.  The Court disagrees.

(4:25CV775)

(citing *The Rightting, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 249694, at *3–4 (N.D. Ohio Feb. 2, 2009)).  Similarly, Section (A)(6) is satisfied when the out-of-state defendant has intentionally committed a tortious act—such as employment discrimination—with the reasonable expectation that the injury will occur in Ohio.  *Dugger*, 2021 WL 5961624, at *5.  Because Plaintiff worked remotely from her home in Ohio, and because she has alleged claims of employment discrimination, Ohio's long-arm statute is satisfied.

           2.  *Due Process*

Next, the Court must determine whether exercising personal jurisdiction in this case would comport with due process.  "Due process requires that an out-of-state defendant have 'minimum contacts' with the forum state sufficient to comport with 'traditional notions of fair play and substantial justice.'"  *Calkins*, 739 F. Supp. 3d at 626 (quoting *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021)).  The "minimum contacts" analysis considers "the defendant's contact with the forum state itself, not the defendant's contacts with the persons who reside there."  *Id*. (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *see Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021) (recognizing a defendant must deliberately reach into the forum state "by, for example, 'exploiting a market' in the forum State or entering a contractual relationship centered there.") (cleaned up).

There are two personal jurisdiction categories: general and specific.  *Goodyear Dunlop tires operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  General jurisdiction is proper when "a defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Flake v. Schrader-Bridgeport Int'l, Inc.*, 538 F. App'x 604, 617 (6th Cir. 2013) (quoting *Goodyear*, 564 U.S. at 919); *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (same).  In the context of corporations, general jurisdiction is proper where

6

(4:25CV775)

the company is either incorporated or has its principal place of business (*i.e.*, its headquarters). *Goodyear*, 564 U.S. at 924; *see Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)* (recognizing a corporate defendant is "at home" at its place of incorporation and its principle place of business.).  Plaintiff argues that Blue SC's affiliates and subsidiaries having contacts in Ohio is sufficient to render Blue SC "at home" in this state.  ECF No. 20 at PageID ##: 377–79.  It is undisputed that Blue SC and the individual defendants in this case are all residents of South Carolina.  ECF No. 1, ¶¶ 2–5.  Plaintiff has not demonstrated that Blue SC or any of its affiliates or subsidiaries are incorporated or headquartered in Ohio such that they are "at home" in Ohio. Therefore, the Court lacks general personal jurisdiction over all Defendants.

Specific jurisdiction, in contrast, "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Goodyear*, 564 U.S. at 919 (internal citations and quotation omitted).  The analysis focuses on the relationship among the defendant, the forum state, and the case of action in the litigation.  *Shaffer v. Heitner, 433 U.S. 186, 204 (1977)*; *Walden, 571 U.S. at 284*.

The Sixth Circuit prescribes a three-part test for assessing specific jurisdiction:

> [1] First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. [2] Second, the cause of action must arise from the defendant's activities there. [3] Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc.*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).  "Failure to meet any one of the three prongs means that personal

7

(4:25CV775)

jurisdiction may not be invoked." *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018) (Polster, J.).

Plaintiff argues specific personal jurisdiction is proper for two main reasons: (1) Blue SC's affiliates and subsidiaries conduct business in Ohio, and (2) Blue SC permitted Plaintiff to work remotely from Ohio and, therefore, the employment discrimination was effectuated in Ohio.  ECF No. 20 at PageID ##: 373–75.  Both fail for independent reasons.

a.  Blue SC's subsidiaries and affiliates

The first prong for specific personal jurisdiction is satisfied when an out-of-state defendant "reaches out beyond one state and create[s] continuing relationships and obligations with citizens of another state." *Calkins*, 739 F. Supp. 3d at 626 (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)).  "The purposeful-availment requirement prevents the exercise of jurisdiction over a defendant 'solely as a result of . . . the unilateral activity of another party or a third person.'" *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 671 (6th Cir. 2023) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  As such, "an employee's personal contacts with a forum are not automatically attributed to their employer." *Phillips v. Persons Servs. Corp.*, No. 2:20-cv-2392, 2021 WL 5277481, at *4 (W.D. Tenn. Mar. 31, 2021) (citing *Burger King Corp.*, 471 U.S. at 478).  Stated another way, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 278.

As an initial matter, Plaintiff "bears the burden of establishing a *prima facie* case that the district court can maintain personal jurisdiction over *each* defendant." *Carbone v. Kaal*, 140 F.4th 805, 808 (6th Cir. 2025) (emphasis added); *see Olsavsky v. Five Star Quality Care, Inc.*, No. , 2009 WL 10715843, at *2 (N.D. Ohio Mar. 4, 2009) (holding that a defendant company's business contacts in Ohio, alone, was insufficient to bring individual defendants within the reach

8

(4:25CV775)

of Ohio's long-arm statute).  Plaintiff fails to demonstrate that Defendants Ali, Griggs, or O'Grady purposefully availed themselves to Ohio law or engaged in any discriminatory conduct in Ohio.  Instead, the Complaint alleges that the discriminatory employment decisions the individual Defendants made occurred in South Carolina, not Ohio.  Accordingly, the Court lacks personal jurisdiction over the individual Defendants.

Regarding Blue SC, Plaintiff first claims that National Alliance, an organization built by and operating as a subsidiary of Blue SC, operates nationwide, including in Ohio.  ECF No. 20 at PageID #: 373.  Her evidence further indicates that CSG, a Blue SC affiliate, was awarded a contract to administer Medicare Part A and Part B Fee-for-Service claims in Ohio and Kentucky.  ECF No. 20-3 at PageID ##: 418–20.  Finally, Plaintiff alleges that she provided underwriting services for another Blue SC's affiliate, Alliance Group, which provides products to customers headquartered in South Carolina with employees nationwide, including in Ohio.  ECF No. 20 at PageID ##: 374–75; ECF No. 20-14, ¶¶ 6–7.  Assuming, *arguendo*, that Plaintiff satisfied her burden to make a *prima facie* showing that Blue SC's affiliates and subsidiaries satisfy the purposeful availment prong, her employment discrimination claims fail on the "arise out of" prong.

The second prong for specific personal jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulations." *Ford Motor Co.*, 592 U.S. at 359–60 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Fran. Cty.*, 582 U.S. 255, 262 (2017)).  "This is a 'lenient standard,' requiring only that the cause of action have a 'substantial connection' to the defendant's activity in the state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017) (citing *Bird*, 289 F.3d at 875).  The Supreme Court

9

(4:25CV775)

recently held that the second prong "contemplates that some relationships will support jurisdiction without a causal showing.  That does not mean anything goes." *Ford Motor Co.*, 592 U.S. at 362; *Sullivan*, 79 F.4th at 672.

None of Plaintiff's employment discrimination allegations relate to Blue SC's affiliates or subsidiaries.  CSG is the only Blue SC affiliate Plaintiff identifies as having direct contacts in Ohio.  But she does not allege that she worked for CSG or, indeed, any other Ohio-based Blue SC subsidiaries or affiliates.  Similarly, even if she had provided underwriting services for Alliance Group, she does not allege such services were provided directly to any Ohio-based customers or employees.  Rather, she admits her customers were headquartered in South Carolina.  ECF No. 20-14, ¶ 7.  That her South Carolina-based customers may have employed individuals in Ohio is not due to Plaintiff's employment but resulted from unilateral third-party decisions not fairly attributable to Blue SC.  *See Sullivan*, 79 F.4th at 671.  Importantly, Plaintiff did not seek any training, promotions, or management positions with CSG, National Alliance, Alliance Group, or any other Blue SC subsidiaries.  Instead, her promotion applications related to leadership roles within Blue SC, which she acknowledges does not have any offices or operations in Ohio.  These facts demonstrate that Plaintiff's claims do not "arise out of" contacts with Ohio established by Blue SC's affiliates or subsidiaries.  Therefore, the Court lacks personal jurisdiction over Blue SC based on its affiliates and subsidiaries.

> b.  Plaintiff's telework arrangement

Plaintiff's second argument that Blue SC purposefully availed itself to Ohio law by permitting her to work remotely from Mahoning County also fails.  When considering whether retaining a remote employee satisfies the purposeful availment prong, courts evaluate several factors, including whether:

(4:25CV775)

> (1) the defendant solicited the employment of the plaintiff in the forum state; (2) the plaintiff worked predominantly from within the forum state; (3) the plaintiff was a high-level employee in the defendant's business; (4) the plaintiff signed the employment contract in the forum state; (5) the defendant had knowledge of, and "facilitated," the plaintiff's remote employment; and (6) the work the plaintiff performed in the forum state advanced the defendant's business interests in the forum state.

*Carpenter v. Southern Airways Express*, No. 2:21-945cv-568, 2021 WL 5937749 (S.D. Ohio Dec. 16, 2021) (citing *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 511 (E.D. Ky. 2019)).

In *Hall v. Rag-O-Rama*, the court held personal jurisdiction existed because, although the foreign company did not operate any stores or sell merchandise in Kentucky, it had (a) actively recruited the plaintiff for an executive-level position while she was living in Kentucky, (b) negotiated and executed the plaintiff's employment contract to permit her to work remotely from Kentucky, and (c) provided the plaintiff with a computer and cellphone for business use in Kentucky. 359 F. Supp. 3d at 511; *see Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 260 (W.D.N.Y. 2018) (holding personal jurisdiction existed because the employer hired the plaintiff "with the express agreement . . . that she would work from New York.").

In contrast, the court in *Carpenter v. Southern Airways Express* concluded plaintiff's remote work in Ohio for an out-of-state airline company's call center was insufficient to establish personal jurisdiction. 2021 WL 5937749 at *1.  The court determined that the plaintiff's decision to work remotely from Ohio was a "unilateral decision" because defendants had not: (a) actively recruited her in Ohio; (b) bargained for or required her to work from Ohio; (c) met with her in Ohio; (d) supplied her with materials to work remotely from Ohio; or (e) tasked her with extending the defendants' business in Ohio. *Id*. at *6.  Other courts have reached the same conclusion under similar circumstances.  *See Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018) *aff'd*, 770 F. App'x 77 (4th Cir. 2019)

11

(4:25CV775)

("Plaintiff's choice to complete her work in North Carolina for her own reasons is a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail itself of the privileges of conducting business in North Carolina."); *Perry v. Nat'l Ass'n of Home Builders of United States*, No. TDC-20-0454, 2020 WL 5759766, at *5 (D. Md. Sept. 28, 2020) (holding the plaintiff's "decision to conduct most of her work from Maryland, even if known to and supported" by her employer "constitutes 'unilateral activity' that does not establish purposeful availment.").

In this case, Blue SC did not recruit Plaintiff while she was living in Ohio, negotiate her employment contract while she was in Ohio, or require her to work from Ohio.  Rather, she unilaterally decided to relocate to Ohio approximately three years after Blue SC had hired her. ECF No. 1, ⁋ 5; ECF No. 20-12.  Although Defendants accommodated her telework request, Plaintiff acknowledges that she was still required to provide underwriting services to customers located in South Carolina.  *See* ECF No. 20-14, ⁋ 7.  Indeed, Plaintiff presents no evidence that she provided services directly to any Blue SC customers, affiliates, or subsidiaries located in Ohio.  As in *Carpenter*, Plaintiff's telework arrangement with Defendants constitutes a "unilateral decision" on her part that is insufficient to support specific personal jurisdiction.

### B.  Improper Venue and Transfer

Even if the Court could exercise personal jurisdiction, Defendants urge the Court to dismiss this action for improper venue or, in the alternative, to transfer this action to the District of South Carolina.  ECF No. 16.  They argue that Plaintiff was initially hired in South Carolina, worked in the South Carolina office for three years before moving to Ohio, where she continued servicing South Carolina customers and accounts remotely.  ECF No. 16 at PageID #: 84. Plaintiff retorts that she worked in Ohio, provided underwriting services for Alliance Group

(4:25CV775)

which serviced Ohio residents, and suffered the effects of Defendants' discrimination in Ohio.

ECF No. 20 at PageID ##: 382–83.  Defendants have the better argument.

The general venue statute provides that venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  It is undisputed that all Defendants are South Carolina residents and, as such venue is proper in South Carolina.  ECF No. 1, ¶¶ 2–5.  Pursuant to § 1391(b)(2), venue is proper if a "substantial part of the events or omissions giving rise to the claim occurred" in this district.  King, 2016 WL 3544745, at *2.  That analysis coincides with the analysis of 42 U.S.C. § 2000e-5(f) under Title VII, which provides that venue is proper in:

> (1) [A]ny judicial district in the State in which the unlawful employment practice is alleged to have been committed;

> (2) [T]he judicial district in which the employment records relevant to such practice are maintained and administered; or

> (3) [T]he judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.

King v. Forest River, Inc., No. 1:16-cv-590, 2016 WL 3544745, at *2 (N.D. Ohio June 29, 2016) (Gaughan, J.) (citing 42 U.S.C. § 2000e-5(f)(3)).  When "the plaintiff brings suit in a jurisdiction that does not satisfy one of the venue requirements listed in 42 U.S.C. § 2000e-5(f)(3), venue is improper."  Vazima v. Potter, No. 4:05-cv-2793, 2006 WL 8450988, at *2 (N.D. Ohio May 26, 2006).  If venue is improper, courts must "dismiss, or in the interest of justice, transfer the case

13

(4:25CV775)

to any district or division in which it could have been brought." *King*, 2016 WL 3544745, at *2 (quoting 28 U.S.C. § 1406(a)).

In the present case, the only connection between the alleged unlawful employment practices and Ohio is Plaintiff's living arrangements.  Plaintiff does not dispute that Blue SC is headquartered in South Carolina, does not maintain offices in Ohio, and that her colleagues, supervisors, and managers were in South Carolina.  Her clients were also located in South Carolina and even if those customers retained Ohio-based employees, Plaintiff offers no evidence that she provided underwriting services directly to any Ohio businesses or residents. ECF No. 20-14, ₽ 7.  In addition, each of the promotions and leadership positions Plaintiff sought were based in South Carolina.  The decision-makers regarding those promotions and leadership opportunities were based in South Carolina.  As such, it is likely that most, if not all, witnesses (*e.g.*, other Blue SC employees, Plaintiff's former supervisors and managers, etc.) and evidence (*e.g.*, employment records, communications, etc.) relating to Plaintiff's employment discrimination claims are in South Carolina, not Ohio.  It is also telling that Plaintiff filed a discrimination charge with the South Carolina Human Rights Commission—not OCRC.  ECF No. 1, ₽ 61.  Although she worked remotely from her home in Ohio, for all intents and purposes, Plaintiff worked in South Carolina, the alleged discrimination occurred in South Carolina, and, as such, the District Court of South Carolina is the proper venue.

Accordingly, venue is not proper in this jurisdiction and, pursuant to 28 U.S.C. § 1406(a), this case shall be transferred to the District of South Carolina.

## IV.    CONCLUSION

In a single motion, Defendants' Motion to Transfer (ECF No. 16), Defendants sought a ruling on either its request for dismissal or transfer.  For the foregoing reasons, the undersigned

14

(4:25CV775)

has responded by providing a transfer.  There is, therefore, no other pending motion before the Court.  As ruled above, the Court lacks personal jurisdiction over all Defendants and, even if the Court had personal jurisdiction, venue is improper.  Therefore, Defendants' Motion to Transfer (ECF No. 16) is granted and, pursuant to 28 U.S.C. § 1406(a), this case shall be transferred to the District of South Carolina.


     IT IS SO ORDERED.


March 25, 2026

Date

*/s/ Benita Y. Pearson*

Benita Y. Pearson
United States District Judge

15